**In re Jimmie R. CROW, M.D., Plaintiff**

v.

**The PENROSE–ST. FRANCIS HEALTHCARE SYSTEM, d/b/a Penrose–St. Francis Health Services, Defendant.**

**No. 06SA323.**

Supreme Court of Colorado, En Banc.

Oct. 15, 2007.

Jones & Keller, P.C., Thomas P. McMahon, Denver, Colorado, Attorneys for Plaintiff.

Kutak Rock LLP, Melvin B. Sabey, Mark L. Sabey, Denver, Colorado, Attorneys for Defendant.

Montgomery, Little, Soran & Murray, P.C., Richard L. Murray, Jr., Greenwood Village, Colorado, Jon N. Ekdahl, Leonard A. Nelson, Chicago, Illinois, Attorneys for Amici Curiae American Medical Association, Colorado Medical Society, and American College of Surgeons.

Cristiano Law, LLC, Francis v. Cristiano, Greenwood Village, Colorado, Schoenwald Sanger and Thompson LLC, Julia T. Thompson Denver, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers.

Kennedy Childs & Fogg, P.C., John R. Mann Denver, Colorado, Attorneys for Amicus Curiae Colorado Hospital Association.

John W. Suthers, Attorney General, Donald D. Domenico, Solicitor General, Diana E. Black, Deputy Attorney General, Claudia Brett Goldin, First Assistant Attorney General, Sue Y. Kim, Assistant Attorney General, Denver, Colorado, Attorneys for Amici Curiae Colorado Board of Medical Examiners and Committee on Anticompetitive Conduct.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

At issue here is a physician's ability to obtain judicial relief when his hospital staff privileges have been suspended pending completion of the peer review process. The Penrose–St. Francis Healthcare System ("the Hospital") asks this court to overturn a trial court ruling allowing Dr. Jimmie R. Crow to bring a civil action against the Hospital seeking injunctive relief and asserting common law claims arising out of the Hospital's peer review of Crow before that peer review process has been completed. The Hospital argues that Crow's claims are not ripe because he has failed to exhaust his administrative remedies of completing the peer review process. Exercising our original jurisdiction pursuant to C.A.R. 21, we issued a rule to show cause and now make that rule absolute.

■■■ We hold that pursuant to the Colorado Professional Review Act ("the CPRA"), sections 12–36.5–101 to –203, C.R.S. (2007), a physician must exhaust all peer review committee administrative remedies before seeking relief in court. This exhaustion requirement, found in subsections 12–36.5–106(7) and (8), applies even though the physician is seeking money damages for common law claims arising out of the process, rather than challenging the board's final decision. Because the Hospital's governing board has not rendered a final decision in his matter, Crow has not exhausted his available administrative remedies, and his case is not ripe for judicial review.

## II. Facts and Procedural History

For over three years now, Crow and the Hospital have been locked in a dispute over the summary suspension and the potential termination of Crow's medical staff privileges at the Hospital. Because this case is in the pre-trial stage, our description of the relevant facts is based on the parties' allegations.

The dispute began in October 2004, when Crow was the on-call surgeon covering the Hospital's emergency room. According to the Hospital, Crow failed to properly treat a patient, J.C., in a timely manner, significantly increasing the patient's risk of morbidity or mortality. In fact, the patient died within two weeks. As a result, the Hospital began its peer review process, which involves other physicians critically examining Crow's care of the Hospital's patients. Under the CPRA, a hospital's peer review is authorized by the state Board of Medical Examiners ("BME") "to review and evaluate the quality and appropriateness of patient care." § 12–36.5–

104(1). As relevant to this case, the peer review process may investigate and determine whether a physician "has provided substandard or inappropriate patient care." § 12–36.5–104(7)(a).

The Hospital's peer review procedure has five steps.[1] First, the peer review committee[2] for the physician's clinical department investigates and recommends an appropriate resolution of the matter to the Credentials Committee and the Medical Executive Committee. Second, the Credentials Committee, a hospital-wide peer review committee charged specifically with reviewing staff privileges issues, reviews the matter, and delivers its recommendation to the Medical Executive Committee. Next, the Medical Executive Committee, a peer review committee charged with representing and acting on behalf of the entire medical staff of the Hospital, receives the two previous committees' recommendations, and then conducts its own investigation of the matter before it makes a recommendation to the Hospital's governing board. If the physician appeals this recommendation, the fourth step is for the Hospital's governing board to appoint a panel to hold a hearing on the matter. The panel's hearing is on the record, and the doctor has a right to present evidence there and may be represented by counsel. After the hearing panel decides, the physician again has a right to appeal the decision, this time to an appellate review panel of the governing board. This fifth panel, made up of individuals who have not served on the previous committees, will hold a similar hearing on the record. After the appellate panel makes its recommendation, the Hospital's governing board makes its final decision on the matter. Based on the timeline for completing the individual steps, the peer review process is envisioned to take several months.

In this case, Crow's peer review process remains unfinished after three years. The first three steps of peer review were completed within six weeks. The surgical peer review committee, the Credentials Committee, and the Medical Executive Committee each met and recommended that Crow's staff privileges at the Hospital be terminated. The Medical Executive Committee's investigation also raised serious concerns about Crow's treatment of seven patients in addition to J.C.

The next step in the process would be an evidentiary hearing. However, a hearing panel has yet to be convened. The parties have different explanations for the delay. It is undisputed that the Hospital has contacted Crow eleven times to set up this hearing, and four times Crow has initially agreed to a scheduled hearing, but then cancelled it for various reasons. Crow counters that the Hospital must provide him with documentation on all the patients whose care is at issue before he is able to defend himself capably at a hearing. The Hospital asserts that Crow has no right to discovery as such, and that Crow can review the relevant medical records at the Hospital.

Shortly after the process began, Crow's privileges were summarily suspended pending the outcome of the peer review process. Crow did not exercise his right to appeal the summary suspension, and his staff privileges at the Hospital remain suspended. Pursuant to section 12–36.5–104(7)(f), the Hospital reported Crow's suspension to the BME, which then conducted its own investigation. Because the basis for the suspension was Crow's treatment of J.C., the first patient in question, the BME limited its investigation to Crow's handling of J.C., and did not address his care of the other seven patients at issue. In January 2006, the BME admonished Crow for his treatment of J.C., and

---

1. There is no dispute that the Hospital's bylaws comply with the CPRA's procedural requirements for peer review committees, as specified in subsections 12–36.5–104(7) and (8).

2. The CPRA uses the term "professional review committee" in place of the more commonly used "peer review committee." *See* § 12–36.5–102(3) (defining "professional review committee" as "any committee authorized under the provision of this article to review and evaluate the professional conduct of and the quality and appropriateness of patient care provided by any physician licensed under article 36 of this title"). As in prior opinions of this court, we use the terms, peer review committee and professional review committee, interchangeably. *See, e.g., Ryals v. St. Mary–Corwin Reg'l Med. Ctr.,* 10 P.3d 654, 657–58 (Colo.2000).

warned him that "complaints disclosing any repetition of such practice may lead to commencement of formal disciplinary proceedings against your license to practice medicine." The BME has not yet investigated the seven other complaints against Crow to determine if the other cases constitute "repetition of such practice," because the BME is waiting to receive the Hospital's hearing panel's recommendation.

In April 2006, Crow sued the Hospital in El Paso County District Court, seeking injunctive relief and alleging breach of contract and tort claims arising from the summary suspension and the incomplete peer review process. Specifically, Crow alleges that in suspending and attempting to terminate his privileges, the Hospital breached its contractual obligations and implied covenants of good faith and fair dealing embodied in the Hospital's bylaws, was negligent in failing to follow its bylaws, and tortiously interfered with Crow's prospective business relations with potential patients, payors, and healthcare providers. Crow is seeking actual and consequential damages, as well as a permanent injunction preventing the Hospital from revoking, suspending, or otherwise limiting Crow's medical staff privileges because of his treatment of any of the patients at issue.[3]

The Hospital filed a motion to dismiss the complaint, arguing that the case in district court was not ripe. It contended that Crow must exhaust his available administrative remedies through the Hospital's peer review process before seeking judicial relief. The district court denied the Hospital's motion, as well as its later motion to reconsider. The Hospital then filed this petition for a rule to show cause pursuant to C.A.R. 21.

### III. Analysis

The main issue before this court today is one of ripeness. The Hospital contends that Crow must exhaust his administrative remedies through the peer review process before he can bring any claims arising out of the administrative proceedings in district court. Crow, on the other hand, maintains that the CPRA only requires exhaustion if one is challenging the board's final decision. He reasons that his claims are ripe because he is seeking money damages for common law tort and contract claims arising out of the process.

■ We reject Crow's argument. The terms of the statute, as well as applicable case precedent and persuasive policy reasons, lead us to conclude that common law claims arising out of the peer review procedure are subject to the exhaustion of administrative remedies requirement detailed in subsections 12–36.5–106(7) and (8). This statute requires that a governing board reach a final decision before a physician can challenge any aspect of the peer review process in court.

We begin our analysis by confirming that the peer review process is administrative in nature. Next, we consider ripeness jurisprudence and the administrative law requirement of exhaustion of remedies. Finally, we determine what peer review procedures Crow must exhaust before going to court, and whether that exhaustion requirement differs if one brings common law claims rather than challenging the committee's final decision.

### a. Physician Peer Review is an Administrative Procedure

Crow concedes that the peer review process is an administrative action, and we agree. Health law commentators' analysis and the general assembly's stated intent for passing the CPRA support this conclusion.

Commentators agree that health law is "thoroughly permeated by administrative law." *See* Timothy Stoltzfus Jost, *Health Law and Administrative Law: A Marriage Most Convenient*, 49 St. Louis U. L.J. 1, 5–7, 11–12, 28–29 (2004). Jost explains that "one finds entities that are not popularly elected, that are not courts, and that either are in fact public administrative agencies or are private entities that resemble administrative agencies making rules and deciding dis-

---

**3.** At oral argument, Crow's attorney stated that this extraordinary request for a permanent injunction was "boilerplate language" that was erroneously included in the complaint and would be dismissed.

putes." *Id.* at 11. He writes that the result of this situation has been that "professional self-governance in health care has become subject to administrative law," with a "form of review [that] resembles closely judicial review of administrative decisions, requiring exhaustion of in-hospital remedies and deferring to peer review findings of fact and application of decision-making discretion." *Id.* at 29.

Although the peer review in this case is being conducted by a private hospital and not a state agency, the general assembly incorporated this type of peer review into the CPRA.[4] First, section 12–36.5–101 declares that the BME, which is established as an administrative agency in section 12–36–104, C.R.S. (2007), "acts for the state in its sovereign capacity to govern licensure, discipline, and professional review of persons licensed to practice medicine in this state." Next, in section 12–36.5–103, the general assembly acknowledges that the BME alone cannot practically investigate every allegation of improper medical care in the state.[5] As a result, the general assembly declared its intent that peer review committees function as an extension of the BME's authority. § 12–36.5–103(1) ("It is therefore the intent of the general assembly that the board of medical examiners utilize and allow professional review committees and governing boards to assist it in meeting its responsibilities under article 36 of this title and under this article."); § 12–36.5–103(3)(a) ("The use of professional review committees is declared to be an extension of the authority of the board of medical examiners."). Therefore, because the BME is an administrative agency, and the general assembly authorized peer review committees to function as an extension of the

BME, we find that the peer review process is an administrative action under Colorado law.

Having determined that the peer review process is administrative in nature, we now review the well-settled principles of administrative law on ripeness and exhaustion, as well as the limited exceptions to the exhaustion requirement.

**b.  Ripeness and Exhaustion of Remedies**

Because courts generally cannot issue advisory opinions, a court will not hear a case that is not ripe. *Bd. of County Comm'rs v. County Rd. Users Ass'n,* 11 P.3d 432, 439 (Colo.2000). Moreover, in the arena of administrative law, courts will not intervene until a petitioner has exhausted all available administrative remedies. *City & County of Denver v. United Air Lines, Inc.,* 8 P.3d 1206, 1212 (Colo.2000). This is so even if the statute under which the administrator is operating is unconstitutional, or the plaintiff alleges there has been a due process violation during the administrative procedure. *Colo. Health Facilities Review Council v. Dist. Court,* 689 P.2d 617, 623 (Colo. 1984); *Colo. State Bd. of Med. Exam'rs v. Dist. Court,* 138 Colo. 227, 233, 331 P.2d 502, 506 (1958). If a party fails to exhaust available remedies, courts lack subject-matter jurisdiction over the action in question. *United Air Lines,* 8 P.3d at 1212.

There are strong policy reasons for the exhaustion doctrine. It enables an administrative agency to develop a sufficient factual record so that the agency itself and later-reviewing courts can adequately review the agency's decision. *McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *United Air Lines,* 8 P.3d at 1212. Further, the requirement promotes administrative efficiency by ensuring

---

4.  Our decisions in *Ryals,* 10 P.3d at 657–58, and *North Colorado Medical Center, Inc. v. Nicholas,* 27 P.3d 828, 840–41 (Colo.2001), describe the legislative history of the CPRA in detail.

5.  Section 12–36.5–103(1) reads in relevant part: The general assembly recognizes that the board of medical examiners, while assuming and retaining ultimate authority for licensure and discipline in accordance with article 36 of this title and in accordance with this article, cannot practically and economically assume responsibility over every single allegation or instance of purported deviation from the standards of quality for the practice of medicine, from the standards of professional conduct, or from the standards of appropriate care and that an attempt to exercise such oversight would result in extraordinary delays in the determination of the legitimacy of such allegations and would result in the inappropriate and unequal exercise of its authority to license and discipline physicians.

an uninterrupted administrative process. *McKart*, 395 U.S. at 194–95, 89 S.Ct. 1657; *United Air Lines*, 8 P.3d at 1213. Exhaustion also ensures agency autonomy, giving the agency a chance to correct its own errors through internal processes without the court's intervention. *United Air Lines*, 8 P.3d at 1213. Finally, the doctrine conserves judicial resources by ensuring that courts only become involved with disputes when the administrative process fails to produce an adequate remedy. *Id.*

■■■■■ Several limited exceptions exist to the exhaustion requirement. First, it is not required when it is "clear beyond a reasonable doubt that further administrative review by the agency would be futile because the agency will not provide the relief requested." *Id.* (quoting *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo.1998)). Second, it is unnecessary when the issue is a matter of law on which the agency lacks authority to rule, such as the constitutionality of a statute. *Golden's Concrete*, 962 P.2d at 923. Lastly, exhaustion is not required when the policy reasons for the doctrine would not be served by mandating that the challenging party exhaust all available administrative remedies. *United Air Lines*, 8 P.3d at 1213.

### c. Exhaustion of Remedies under the CPRA

We next consider what is required to exhaust a physician's remedies in the peer review process, and whether the exhaustion requirement differs when the physician does not challenge the final board action, but rather attempts to bring common law claims arising out of the process. Crow concedes that his injunction claim was brought in error. He acknowledges that he cannot challenge the board's decision making process until he exhausts his remedies and the board reaches a final decision. However, Crow argues that the CPRA and relevant case law do not require that he wait until a final board action to bring common law claims arising out of the process.

■■■ We reject Crow's argument. After examining the key language in the statute, relevant case law from Colorado and other states, and the strong policy considerations for requiring exhaustion, we hold that a physician must exhaust the administrative remedies of the CPRA, resulting in a final board action by the hospital, before filing a common law claim in court arising out of the peer review process.

■■■■ The goal in construing statutes is to ascertain and give effect to the general assembly's intent. *In re Marriage of Chalat*, 112 P.3d 47, 54 (Colo.2005). We initially look to the statutory language to ascertain that intent. *People v. Dist. Court*, 713 P.2d 918, 921 (Colo.1986). If the language is ambiguous or conflicts with other provisions of the statute, we will resort to other tools of statutory interpretation such as legislative history. *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002). To effectuate the general assembly's intent, we will read and consider the statute as a whole, giving consistent, harmonious, and sensible effect to all parts. *In re Marriage of Ikeler*, 161 P.3d 663, 667 (Colo.2007).

Section 12–36.5–106 of the CPRA provides a two-track exhaustion requirement for peer review committee actions, depending on whether the claim alleges anticompetitive conduct by the peer review committee. For allegations of anticompetitive conduct, subsection 106(7) provides that a physician must be "the subject of a *final* action by a governing board" before challenging the decision as being the result of· the anticompetitive conduct of those involved.[6] § 12–36.5–106(7) (emphasis added). Thus if the complaint deals with anticompetitive conduct, subsection 106(7) prohibits a physician from challenging a peer review committee's actions as being anticompetitive while the matter is still pending.

■■■ For claims arising out of the peer review process that do not allege anticompetitive conduct, subsection 106(8) similarly provides for judicial intervention only after final board action: "Nothing in this article shall preclude a physician or health care provider

---

6. The physician must bring this challenge to the committee on anticompetitive conduct, a permanent committee of the BME, before being able to challenge the peer review committee judicially for being anticompetitive. § 12–36.5–106(1) & (7).

otherwise aggrieved by the *final* action of a governing board from seeking other remedies available to them by law, except as provided in subsection (7) of this section." § 12–36.5–106(8) (emphasis added). The two tracks of the statutory scheme are consistent: in either instance, a challenge to the peer review process is only allowed after the hospital's governing board has made its final decision. There is no provision in the CPRA that authorizes a physician to challenge the peer review process while the process is ongoing.

Crow, however, argues that common law claims are not covered by the statute because the CPRA only contemplates challenges to the board's final decision and does not allow for money damages. He contends that he is excepted from the exhaustion rule because he is not challenging the Hospital's final decision, but rather asserting that the Hospital breached its contract with him and tortiously injured him during the process.

We reject this claim. Although the statute does not expressly state that a physician must exhaust administrative remedies before pursuing common law claims in court, it is the only logical reading of the statute. Subsections 106(7) and 106(8) are meant to be comprehensive, covering all possible claims that a physician may seek to pursue arising out of the peer review process. Subsection 106(7) carves out a narrow subset of claims—those alleging anticompetitive conduct—and handles them separately. Subsection 106(8) covers all other claims; its inclusive language allows the aggrieved physicians to "seek[ ] other remedies available to them by law." This subsection applies to a situation where a physician like Crow wishes to file common law claims for damages allegedly arising out of the peer review process. There is no exception excusing a physician from exhausting administrative remedies.

In arguing his position, Crow misreads section 12–36.5–106 to cover only challenges to the final board decision. Rather, the statute actually sets out a general rule that any challenge to either the process or the final board decision can only be brought after the final board action. Crow's construction would undermine the peer review process by permitting any physician to evade the CPRA's explicit exhaustion requirement by complaining solely about the process. Crow's reading is inconsistent with the general assembly's treatment of a hospital's peer review as an extension of the BME by requiring physicians to exhaust administrative remedies provided by a hospital's peer review process. Instead, Crow's interpretation would riddle the language of subsections 106(7) and 106(8) with unwritten and unintended exceptions to the exhaustion requirement.

■ Further, Crow's reading of the statute would not give harmonious effect to the whole statutory scheme. Three sections of the CPRA deal with the immunity of participants in the peer review process, and make participants immune to liability if they act in good faith. *See* §§ 12–36.5–103(3)(b), –105, –203; *N. Colo. Med. Ctr., Inc. v. Nicholas*, 27 P.3d 828, 841 (Colo.2001). Determining if the participants acted in good faith is an intensely factual finding that requires a reviewing court to examine thoroughly the record of the various proceedings. *See N. Colo. Med. Ctr.*, 27 P.3d at 842–45.

The immunity provisions show the general assembly's intent to safeguard the peer review process by protecting participants who act in good faith. A reviewing court cannot capably make that determination until the administrative remedies have been exhausted and a complete record has been developed. Allowing physicians like Crow to interrupt peer review and subject its participants to liability while the process is incomplete runs counter to the CPRA's statutory intent to afford participants the time and immunity needed to complete meaningful peer review.

In addition, case precedent and policy considerations buttress our reading of the statute. Although this precise issue has not been directly before our appellate courts, several Colorado cases are consistent with the conclusion that physicians can only challenge the peer review process after a final board action has been rendered, even if the claim is based in common law. In *Colorado State Board of Medical Examiners*, we held that a physician who was subject to a BME investigation could not seek to enjoin the

investigation before the investigation had concluded. 138 Colo. 227, 331 P.2d 502. This court stated that the district court had no jurisdiction over the physician's claim, even when the physician argued that the statute requiring the proceeding was unconstitutional. *Id.* at 233, 331 P.2d at 506. Accordingly, the district court was ordered to dismiss the complaint as not ripe. *Id.* at 236, 331 P.2d at 507. Similarly, in *Colorado Health Facilities Review Council,* we held that hospitals, alleging that the state Board of Health's administrative procedure violated their due process rights, could bring their claims against the board in court only after the board had rendered a final decision. 689 P.2d at 623; *see also* David A. Burdage, *Representing Physicians in Hospital–Based Professional Review Actions,* Colo. Law., Mar. 1996, at 57, 58 (listing possible judicial remedies available to aggrieved physicians under the CPRA, all of which occur after the governing board has made its final decision).

In *Ryals,* we ruled that subsection 106(7) covered not just a physician's complaints of anticompetitive conduct in the final board action, but also complaints of any such conduct occurring throughout the peer review process. 10 P.3d at 656 ("We hold, based on the plain language of [the CPRA] and the statutory scheme as a whole, that the [committee on anticompetitive conduct] has jurisdiction *over those claims of anticompetitive conduct that arise out of the professional review committee activity.*" (emphasis added)). This holding directly refutes Crow's argument that subsection 12–36.5–106(8) only covers challenges to the final board decision, rather than the correct reading of the statute that any challenge arising out of the process or the final decision can be brought in court only after a final board decision has been rendered.

In *Pfenninger v. Exempla, Inc.,* 12 P.3d 830 (Colo.App.2000), *vacated and remanded to* 17 P.3d 841 (Colo.App.2000) ("*Pfenninger I*"), and *Pfenninger v. Exempla, Inc.,* 17 P.3d 841 (Colo.App.2000) ("*Pfenninger II*"), the court of appeals twice came to a similar conclusion. In the *Pfenninger* decisions, a case which we vacated and remanded for reconsideration in light of our decision in

*Ryals,* the court of appeals ruled both times that a physician, who brought a common law defamation claim arising out of the peer review process, could bring his claim in state court under subsection 12–36.5–106(8) once the board had made its final decision. *Pfenninger II,* 17 P.3d at 843–44; *Pfenninger I,* 12 P.3d at 834–35. *Pfenninger's* posture was admittedly somewhat different. The issue was whether the physician must appeal to the committee on anticompetitive conduct before filing defamation claims in state court when his lawsuit raised no anticompetitive conduct claims. The underlying point, however, is consistent: the physician could only challenge conduct arising out of the peer review process after the board had reached its final decision. That remains the case even if the physician, as in *Pfenninger* or Crow here, brings a common law claim based on the conduct of those involved in the professional review process.

The rule requiring physicians to exhaust administrative remedies before going to court, even if only bringing common law claims stemming from the process, has consistently been applied in other states. California has followed this rule for over thirty years. *See Westlake Comm. Hosp. v. Superior Court,* 17 Cal.3d 465, 131 Cal.Rptr. 90, 551 P.2d 410, 415–16 (1976); *Kaiser Found. Hosps. v. Sacramento County Superior Court,* 128 Cal.App.4th 85, 26 Cal.Rptr.3d 744, 747 (2005). *Kaiser* is particularly factually analogous. In that case, the California Court of Appeals held that a physician must exhaust administrative remedies before pursuing judicial relief for her tort claims arising out of the peer review process. 26 Cal. Rptr.3d at 747, 763–65. In addition, there is longstanding precedent from Alaska, the District of Columbia, and New Jersey similarly concluding that exhaustion of administrative remedies is required before judicially challenging a professional review committee's decision, even if the physician wishes only to bring a common law claim arising out of the process. *See Eidelson v. Archer,* 645 P.2d 171, 183 (Alaska 1982); *Shulman v. Wash. Hosp. Ctr.,* 348 F.2d 70, 71–72 (D.C.Cir.1965); *Garrow v. Elizabeth Gen'l Hosp. & Dispensary,* 79 N.J. 549, 401 A.2d 533, 538–39 (1979).

The cases cited by Crow in support of his argument that exhaustion is not required for common law claims are inapposite. In *Ryals*, we held that exhaustion was not necessary when the physician claimed there was an anticompetitive violation by the hospital arising separately from the peer review process. 10 P.3d at 656, 659. In that case, the hospital denied the physician privileges based on the hospital's exclusive contract with a third party to read MRIs. *Id.* at 656. Therefore, the hospital's alleged anticompetitive conduct did not arise out of the peer review process. Here, on the other hand, Crow's complaints stem solely from the process, or in·his view, lack of process, that he has been afforded by the Hospital during this protracted· peer review dispute, and not from a separate matter.

Similarly, our decision in *Brooke v. Restaurant Services, Inc.*, 906 P.2d 66 (Colo. 1995), does not support Crow's argument. *Brooke* held that an employee alleging employment discrimination need not exhaust administrative remedies when her discrimination claim was not filed pursuant to her rights under the state's anti-discrimination act. *Id.* at 67–68, 70. We reached that conclusion in *Brooke* because the state's anti-discrimination act did not "provide a comprehensive scheme for addressing sex discrimination," and the plaintiff did not allege a claim under the act. *Id.* at 70. By contrast, Crow's claims are all derived from his rights under the CPRA, and the CPRA is intended to provide a comprehensive scheme for addressing all peer review procedures.

Further, the policy reasons for requiring administrative exhaustion are particularly persuasive in cases of physician peer review. Requiring exhaustion preserves the Hospital's autonomy, which would be substantially compromised if the physicians sitting on the peer review committees were required to make their decisions with the realization that they could be sued while the review process was ongoing.

Requiring exhaustion also enables the peer review committees to develop a factual record. A record of the expert participants' findings is vital to a reviewing court called upon to determine the reasonableness of the steps taken by the hospital, and to evaluate whether the peer review participants acted in good faith.

In addition, exhaustion requirements prevent fragmentation of the administrative process. Here, Crow's attempt to litigate this matter has delayed the long overdue resolution of his peer review, and has prevented the BME from timely concluding its investigation into Crow's care of all eight patients at issue. *Accord Colo. Health Facilities Review Council*, 689 P.2d at 621–22.

Crow has failed to show that this case falls within any of the narrow exceptions to the exhaustion requirement. He does not claim futility and this is not a question of law on which the agency is. not qualified to rule.

■ In conclusion, Crow's claims are not ripe because he has not exhausted his administrative remedies in the peer review process. Good faith immunity protects the participants in the peer review process. Thus, Crow cannot bring his common law claims arising out of the process in court until the Hospital's board makes its final decision.

#### d. Fair Hearing Remedy

Crow next argues that the Hospital denied him a fair and prompt hearing, and therefore he should be able to pursue his common law claims now. However, this argument is not convincing. His claims would not bring him the hearing he allegedly wants. Crow has repeatedly cancelled or refused to schedule a hearing, and as the Hospital correctly points out, C.R.C.P. 106 provides the appropriate means to compel an administrative party to act.

#### IV. Immunity

Regarding the last issue raised by both parties, whether a judicial action like Crow's would destroy the privileges and immunities afforded to professional review committees under the CPRA and the federal Health Care Quality Improvement Act of 1986, *see* 42 U.S.C. §§ 11101–11152 (2000), we need not reach that issue because the instant case is not ripe. We do, however, reaffirm our recent analysis of immunity under both stat-

utes as set forth in *North Colorado Medical Center,* 27 P.3d 828.

### V. Conclusion

We hold that the CPRA, Colorado precedent, cases from other states, and strong policy reasons all support the conclusion that a physician subject to peer review must exhaust all available administrative remedies outlined in the CPRA before bringing any common law claims arising out of the process or final decision in court. As a result, we hold that the trial court erred in denying the Hospital's motions to dismiss Crow's claims. We now make the rule to show cause absolute, and order the district court to grant the Hospital's motion to dismiss Crow's claims.

