2012 COA 43

**Jimmie R. CROW, M.D.,
Plaintiff–Appellant,**

v.

**PENROSE–ST. FRANCIS HEALTHCARE SYSTEM, d/b/a Penrose–St. Francis Health Services, Defendant–Appellee.**

**No. 10CA2617.**

Colorado Court of Appeals,
Div. I.

March 15, 2012.

Jones & Keller, P.C., Thomas P. McMahon, Denver, CO, for Plaintiff–Appellant.

Kutak Rock LLP, Melvin B. Sabey, Mark L. Sabey, Michael M. Frandina, Denver, CO, for Defendant–Appellee.

Opinion by Judge MÁRQUEZ.*

¶ 1 Jimmie R. Crow, M.D., appeals the judgment of the district court affirming the decision of Penrose–St. Francis Healthcare

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

System (Penrose) to terminate Crow's hospital staff privileges and denying his request to subpoena records of the peer review committee. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

¶ 2 The factual history of this case is set forth in *Crow v. Penrose–St. Francis Healthcare System,* 169 P.3d 158 (Colo.2007) (*Crow I* ), and will not be fully repeated here. Briefly, in October 2004, Crow performed surgery on patient J.C., who died later that month. Penrose then began a peer review process to address whether Crow failed to treat the patient properly in a timely manner. However, before an evidentiary hearing before a hearing panel took place, Crow sued Penrose for breach of contract and tortious conduct. The supreme court held that Crow's claims were not ripe because he had not exhausted his administrative remedies in the peer review process and that he could not bring his common law claims arising out of the process in court until the hospital's board made its final decision. *Crow I,* 169 P.3d at 168.

### A. Colorado Peer Review Act

¶ 3 Under the Colorado Professional Review Act (CPRA), sections 12–36.5–101 to –203, C.R.S.2011, a private hospital's peer review is authorized by the state Board of Medical Examiners (BME) "to review and evaluate the quality and appropriateness of patient care." § 12–36.5–104(1). The peer review process may investigate and determine whether a physician "has provided substandard or inappropriate patient care." § 12–36.5–104(7)(a).

¶ 4 Penrose's peer review process has certain steps, which the supreme court outlined in *Crow I,* 169 P.3d at 162. First, the peer review committee for the physician's clinical department, in this case, the Surgical Peer Review Committee (SPRC), investigates and recommends an appropriate resolution of the matter to the Credentials Committee and the Medical Executive Committee (MEC). Second, the ·Credentials Committee, a hospital-wide peer review committee charged specifically with reviewing staff privileges issues,

reviews the matter, and delivers its recommendation to the MEC. Third, the MEC, a peer review committee charged with representing and acting on behalf of Penrose's entire medical staff, receives the two previous committees' recommendations, and then conducts its own investigation of the matter before it makes a recommendation to Penrose's governing board (Board).

¶ 5 If the physician appeals this recommendation, the fourth step is for Penrose's Board to appoint a panel to hold a hearing on the matter. The panel's hearing is on the record, and the physician has a right to present evidence there and may be represented by counsel. After the hearing panel decides, the physician again has a right to appeal, this time to an appellate review panel (ARP) of the Board. This fifth panel, made up of individuals who have not served on the previous committees, will hold a similar hearing on the record. After the ARP makes its recommendation, Penrose's Board makes its final decision on the matter.

### B. Procedural Background

¶ 6 Before the supreme court's decision in *Crow I,* the SPRC, the Credentials Committee, and the MEC each had met and recommended that Crow's staff privileges at Penrose be terminated. Crow's privileges had been summarily suspended pending the outcome of the peer review process, but Crow did not appeal the summary suspension.

¶ 7 Following the supreme court's decision, Crow participated in the evidentiary hearing before the hearing panel on May 8, 2008. The hearing panel upheld the recommendation to revoke Crow's hospital staff privileges. After the hearing panel's decision, Crow sought a hearing before an ARP and on May 16, 2008, attempted to subpoena the professional review committee records (peer review records). The ARP refused to provide the subpoenaed records and recommended revocation to the Board, which affirmed the ARP's recommendation.

¶ 8 Crow then filed a complaint pursuant to the State Administrative Procedure Act (APA), sections 24–4–101 to –108, C.R.S.2011, to set aside Penrose's decision and compel

Penrose to provide the requested peer review records. The district court granted Penrose's motion to dismiss the complaint after determining the APA did not apply to peer review by a private hospital. However, the district court recognized C.R.C.P. 106(a)(4) as an alternative basis of relief and granted Crow leave to amend his complaint.

¶ 9 Crow then filed an amended complaint requesting relief under C.R.C.P. 106(a)(4). Crow, for the second time, attempted to subpoena the peer review records on October 6, 2009, and Penrose moved to quash this subpoena. After a status conference, the district court quashed this subpoena. The district court also granted Penrose's motion to dismiss several of the amended complaint claims and, on August 18, 2010, affirmed Penrose's decision to terminate Crow's hospital staff privileges. This appeal followed.

## II. Judicial Review

¶ 10 Crow contends that private hospital peer review is state administrative action subject to judicial review under the APA. He argues the district court's analysis and conclusion—that because there was no state action, the proper method for seeking judicial review is pursuant to C.R.C.P. 106(a)(4)—are faulty. We agree with the district court.

■ ¶ 11 The APA governs judicial review only of state agency actions. *Colorado State Bd. of Medical Examiners v. Colorado Court of Appeals,* 920 P.2d 807, 811 (Colo.1996). The APA defines "agency" as "any board, bureau, commission, department, institution, division, section, or officer *of the state.*" § 24–4–102(3), C.R.S.2011 (emphasis added).

¶ 12 In support of his argument that the peer review committees are an extension of the BME and therefore constitute state action, Crow cites the following from *Crow I:*

Although the peer review in this case is being conducted by a private hospital ... the general assembly incorporated this type of peer review into the CPRA. First, ... the BME ... "acts for the state in its sovereign capacity...." [Next] peer review committees function as an extension of the BME's authority. Therefore, ...

we find that the peer review process is an administrative action under Colorado law. 169 P.3d at 164 (citations omitted).

¶ 13 We reject the argument Crow bases on the quoted language. As an initial matter, stated in its entirety, the first sentence reads, "Although the peer review in this case is being conducted by a private hospital *and not a state agency,* the general assembly incorporated this type of peer review into the CPRA." *Id.* (emphasis added). In addition, the supreme court did not state that the APA applies to judicial review in these circumstances. Rather, it addressed whether Crow's case was ripe for review, and, in doing so, it began by analyzing the peer review process, concluded that peer review was incorporated into the CPRA, and determined that the peer review process is conducted under that law.

■ ¶ 14 Because Penrose's peer review process to determine whether the private hospital will continue to extend hospital staff privileges to a physician is not state agency action, the APA does not govern Crow's claims. *See North Colorado Med. Ctr., Inc. v. Nicholas,* 27 P.3d 828, 836 (Colo.2001) (professional peer review at private hospitals is not state action for purposes of section 1983 claim). Instead, judicial review of administrative actions by private hospitals must be conducted pursuant to C.R.C.P. 106(a)(4). *See Franco v. District Court,* 641 P.2d 922, 928 n. 7 (Colo.1982) ("A physician on the staff of a private hospital may seek judicial review under C.R.C.P. 106(a)(4).").

## III. Access to Peer Review Records

¶ 15 After the evidentiary hearing and on judicial review, Crow attempted to subpoena any and all communications by the peer review committees that took place before the May 8, 2008, evidentiary hearing. He contends that section 12–36.5–104(10)(b)(II) and (III), C.R.S.2011, of the CPRA authorize his subpoena of the records of Penrose's peer review committee and Board and grant him the right to those records. We agree that he may subpoena such records before the ARP.

¶ 16 We review de novo questions of law concerning the application and construction

of statutes. *DeSantis v. Simon*, 209 P.3d 1069, 1073 (Colo.2009). In determining the meaning of a statute, our duty is to effectuate the intent and purpose of the General Assembly. *Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220, 223 (Colo.2005). We first consider the plain language of the statute. *People v. Null*, 233 P.3d 670, 679 (Colo. 2010). If the language is clear, we apply the plain and ordinary meaning of the statute. *Lobato*, 105 P.3d at 223. If the language is susceptible of more than one meaning, we look to a variety of sources of legislative intent, including the legislative goals underlying the statute, the circumstances in which it was adopted, and the consequences of alternative interpretations. *Id.* at 223–24.

¶ 17 To reasonably effectuate the legislative intent, the language at issue must be read in the context of the statute as a whole. *Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo.2010). Ultimately, we should interpret the statute so as to give consistent, harmonious, and sensible effect to all parts, while avoiding illogical or absurd results. *McCool v. Sears*, 186 P.3d 147, 150 (Colo.App.2008).

■ ¶ 18 The statutes at issue here include the following. Section 12–36.5–104(10)(a), C.R.S.2011, provides in pertinent part, "The records of a professional review committee, a governing board, or the committee on anticompetitive conduct shall not be subject to subpoena or discovery and shall not be admissible in any civil suit brought against a physician who is the subject of such records." Section 12–36.5–104(10)(b) provides, as relevant here:

Notwithstanding the provisions of paragraph (a) of this subsection (10), such records shall be subject to subpoena and available for use:

. . .

(II) By either party in any appeal or de novo proceeding brought pursuant to this part 1; [or]

(III) By a physician in a suit seeking judicial review of any action by the governing board. . . .

¶ 19 Crow sought to subpoena the records to use them before the ARP and on judicial review. At oral argument, counsel for Crow argued that he should be able to present the records to the ARP to support the assertion that the decision had not been made on the merits, but rather was the result of a trial by a "kangaroo court."

¶ 20 The district court noted that section 12–36.5–104(8)(a), C.R.S.2011, allows Crow to appeal to the governing board and "to offer such argument *on the record* as he deems appropriate" (emphasis in original); the statute does not provide for a new evidentiary hearing; and section 12–36.5–104(10)(b)(II) only exists to make the record of the governing board's proceeding available for use in a judicial review action initiated by a physician. The district court's analysis reasonably sought to be consistent with the general rule that judicial review is limited to reviewing the record made during an administrative hearing. *See Franco*, 641 P.2d at 928 n. 7. C.R.C.P. 106(a)(4) provides that judicial review is "limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." *See also Lieb v. Trimble*, 183 P.3d 702, 704 (Colo.App.2008) (C.R.C.P. 106(a)(4) review is based solely on the record before the board and is limited to determining whether the board exceeded its jurisdiction or abused its discretion).

¶ 21 However, in our view, the plain language of the statute at issue here supports Crow's contention. Under section 12–36.5–104(10)(a), the records of the SPRC are not subject to subpoena or discovery and are not admissible in a civil suit against the physician. Nevertheless, section 12–36.5–104(10)(b) plainly provides that the records "shall be subject to subpoena and available for use in any appeal or de novo proceeding brought pursuant to this part 1" and "by a physician seeking judicial review." Outside of the exceptions listed, the record remains confidential. *See* § 12–36.5–104.4(2)(b), C.R.S.2011.

¶ 22 Colorado enacted peer review legislation in 1975. *Franco*, 641 P.2d at 925. In *Franco*, the supreme court addressed whether the peer review privilege protected the records of a review committee from pretrial

discovery in a physician's civil action for damages and injunctive relief. The statute was amended in 1976 to provide that the "records of a review committee shall not be subject to subpoena in any civil suit against the physician," but also provided that the "records of a review committee or a hospital board may be subpoenaed in a suit brought by the physician seeking judicial review of any action of the review committee or a hospital board." Ch. 46, sec. 1, § 12–43.5–102, 1976 Colo. Sess. Laws 427; *see Franco,* 641 P.2d at 927. The supreme court construed the statutory scheme to mean that the General Assembly intended to shield the committee records from subpoena or discovery "in all civil litigation except a judicial review proceeding." *Franco,* 641 P.2d at 927. It later noted that the General Assembly intended to "limit discovery of committee records exclusively to judicial review proceedings." *Id.* at 928. The current statute, enacted in 1989, retains language similar to the 1976 legislation and even expands the exceptions.

¶ 23 In opposing Crow's interpretation, Penrose points out that unlike the statutes governing the Colorado MBE and the committee on anticompetitive conduct, which specifically provide that such entities have the power to issue subpoenas, *see* §§ 12–36–104(1)(b)(II), 12–36.5–106(9)(g), C.R.S.2011, the statutes regarding peer review committees do not contain similar language. However, we cannot ignore the clear and mandatory language stating that such records "shall be subject to subpoena and available for use." § 12–36.5–104(10)(b). Accordingly, we conclude the records Crow seeks are subject to subpoena before the ARP. We further conclude that implicit in this language is the authority of the ARP to issue the subpoenas.

¶ 24 The statutory scheme indicates that the record is not complete until the governing board issues its decision. The supreme court in *Crow I,* after explaining the physician has a right to appeal the hearing panel's decision to the ARP, stated that the ARP "will hold a similar hearing on the record." *Crow I,* 169 P.3d at 162; *see* § 12–36.5–104(8)(a) (the bylaws shall provide that the physician shall have the right to appear before the governing board and "to offer such argument on the record as he deems appropriate"); *Franco,* 641 P.2d at 928 (on judicial review "the evidence before the court is limited solely to the record as made before the hospital governing board").

¶ 25 Contrary to the position advocated by counsel for Penrose at oral argument, we also conclude that the records Crow requested in his subpoena are available for his use. His subpoena stated he sought

1. All materials ... giving rise to the October 7, 2004 meeting of the SPRC; all materials considered by that Committee on that or any other occasion relating to the care of patient [J.C.] or Dr. Crow's medical staff membership or clinical privileges; and all minutes, memoranda, notes, recordings and other records of the meeting(s) held by the SPRC on October 7, 2004, or on any other occasion relating thereto.

2. The recommendation sent by the SPRC to the [MEC requesting summary suspension], and all materials ... accompanying that recommendation and request.

3. All minutes, memoranda, notes, recordings and other records of any review conducted by the SPRC with respect to Dr. Crow's October 22, 2004 response to being summarily suspended; any findings, determinations, recommendations, requests or other communications forwarded by the SPRC to the MEC or Credentials Committee thereafter; and any materials sent by the SPRC to the MEC or Credentials Committee accompanying such findings, determinations, recommendations, requests or other communications.

4. All recommendations forwarded to the Credentials Committee on or about November 10, 2004 ... and all minutes, memoranda, notes, recordings and other records of any meetings that were held by the SPRC or any other body or person at which such recommendations were considered or decided upon.

5. All recommendations adverse to Dr. Crow that were forwarded by the Credentials Committee to the MEC on or about November 10, 2004; any materials sent by the Credentials Committee to the MEC accompanying those recommendations; and all minutes, memoranda, notes, recordings and other records of any meetings, discussions or votes that were held by the Credentials Committee at which such adverse recommendations were considered or decided upon.

6. All findings of the SPRC and the Credentials Committee pertaining to [J.C.] or Dr. Crow's medical staff membership or clinical privileges; all materials considered by each such committee prior to arriving at those findings; and all minutes, memoranda, notes, recordings and other records of the meetings that have been held by those committees regarding [J.C.] or Dr. Crow's medical staff membership or clinical privileges.

7. All evidence considered by the MEC prior to arriving at the finding in its November 16, 2004 meeting regarding [J.C.] or Dr. Crow's medical staff membership or clinical privileges; and all minutes, memoranda, notes, recordings and other records of the meeting that was held by the MEC on November 16, 2004 regarding the same.

The CPRA defines "records" as

any and all written or verbal communications by any person, any member of an investigative body, or any professional review committee or governing board, or the staff thereof, arising from any activities of a professional review committee authorized by this article, including the complaint, response, correspondence related thereto, recordings or transcripts of proceedings, minutes, formal recommendations, decisions, exhibits, and other similar

items or documents typically constituting the records of administrative proceedings.

§ 12–36.5–102(4), C.R.S.2011. We conclude this definition is broad enough to include the records at issue here.

¶ 26 We also reject the argument by counsel for Penrose that the language of section 12–36.5–104(10)(a) is inconsistent with Crow's position. We read this provision to apply to civil suits, not peer review proceedings. *See Franco*, 641 P.2d at 927; *see also* David A. Burlage, *Representing Physicians in Hospital–Based Professional Review Actions*, 25 Colo. Law. 57, 58 (Mar. 1996).

¶ 27 Accordingly, we conclude that the records Crow requested were subject to subpoena before the ARP and that he is entitled to a new hearing before that body after the records are provided. In view of this conclusion, we do not address the subpoena before the district court.

## IV.   Summary Suspension

¶ 28 Based on our review of the record, we conclude the district court properly dismissed Crow's claim regarding the summary suspension.

■ ¶ 29 Crow claims that he exhausted his administrative remedies regarding summary suspension because no summary suspension hearing right exists. He asserts that the Penrose bylaws provide a right to a hearing "whenever an unfavorable recommendation has been made by the Medical Executive Committee or the Board regarding ... suspension of clinical privileges for a period of greater than 14 days." We are not persuaded.

■ ¶ 30 For a reviewing court to have jurisdiction over a physician's claims arising from the peer review process, the physician must exhaust all administrative remedies before seeking relief in court. § 12–36.5–106(8), C.R.S.2011; *Crow I*, 169 P.3d at 165; *see also Moss v. Members of Colorado Wildlife Comm'n*, 250 P.3d 739, 742 (Colo.App.2010) (exhaustion of administrative remedies is a threshold to judicial review of agency action; failure to exhaust administrative remedies means a district court does not have jurisdiction over the claims).

¶ 31 Penrose's chief executive officer notified Crow on October 18, 2004, that "with concurrence of the Board," his suspension would remain in effect until resolution of the matter, and that he had "rights afforded by

the Bylaws and Fair Hearing Manual of the Medical Staff Bylaws including [a] right to the hearing process." Thus, the suspension lasted more than fourteen days, and Crow did not exercise this right. The supreme court observed as much when it dismissed Crow's premature claims in 2007:

> Shortly after the process began, Crow's privileges were summarily suspended pending the outcome of the peer review process. Crow did not exercise his right to appeal the summary suspension, and his staff privileges at the Hospital remain suspended.

*Crow I*, 169 P.3d at 162.

¶ 32 Because Crow did not exhaust his administrative remedies regarding summary suspension, the district court properly dismissed this claim for lack of jurisdiction.

¶ 33 While Crow also argues that the summary suspension procedure was not followed, the record indicates that Crow did not raise this contention during the peer review process. Because Crow failed to avail himself of the proper administrative remedy, the district court did not have jurisdiction to review the summary suspension.

### V. Burden of Proof

¶ 34 Crow next argues that the hearing panel applied the incorrect burden of proof. We perceive no reversible error.

¶ 35 The hearing panel's recommendations concerning Crow's staff privileges dated May 8, 2008, stated in part:

> Dr. Crow argues that the burden of proof is on the Medical Executive Committee to prove each of the above three issues by a preponderance of the evidence. The Presiding Officer disagrees with this analysis. However, if that was the correct interpretation of the Bylaw, the Panel would and does find that the Medical Executive Committee has clearly proven its case by a preponderance of the evidence.

¶ 36 Thus, we conclude, as the district court did, that, even if the incorrect standard of proof was applied, the alternative finding makes it clear that the outcome nevertheless would have been the same under either standard.

¶ 37 Accordingly, those portions of the district court's judgment denying Crow the right to subpoena records before the ARP and upholding Penrose's revocation of Crow's medical privileges at the facility are reversed, and the case is remanded with directions that Crow be allowed to subpoena the records at issue, be granted a new hearing before the ARP after the subpoenaed records are provided, and be allowed to complete the remaining steps in the peer review process. Those portions of the district court's judgment denying review under the APA, dismissing the claim regarding summary suspension, and determining the burden of proof before the hearing panel are affirmed.

Judge TAUBMAN and Judge DAILEY concur.