James LEE, M.D.; Jeffrey Lee, M.D.; and Front Range Surgical Specialists, Inc., a Colorado corporation, Plaintiffs–Appellants,

v.

BANNER HEALTH, an Arizona non-profit corporation; Banner Health d/b/a North Colorado Medical Center; Donald Mellman, individually and as a former employee of Banner Health; Les Fraser, M.D., individually and as a partner in Greeley Medical Clinic; Rick Kiser, M.D., individually and as a partner in Greeley Medical Clinic; Lisa Burton, M.D., individually and as a partner in Surgical Associates of Greeley; Gene O'Hara, as Chief Executive Officer of North Colorado Medical Center; Peter S. Fine, as a member of the Banner Health Board of Directors and as Chief Executive Officer and President of Banner Health; Banner Health Board of Directors; and Appellate Review Committee of Banner Health, Defendants–Appellees.

No. 08CA0665.

Colorado Court of Appeals, Div. I.

July 9, 2009.

Charles H. Torres, P.C., Charles H. Torres, Denver, Colorado, for Plaintiffs–Appellants.

McConnell, Siderius, Fleischner, Houghtaling & Craigmile, LLC, Linda L. Siderius, Robert W. Steinmetz, Denver, Colorado, for Defendants–Appellees.

Banner Health, Banner Health d/b/a North Colorado Medical Center, and Donald Mellman.

Budman & Hershey, LLC, Kari M. Hershey, Denver, Colorado, for Defendants–Appellees Les Fraser, M.D. and Rick Kiser, M.D.

Hill & Robbins, P.C., John F. Walsh, III, Jennifer H. Hunt, Denver, Colorado, for Defendants–Appellees Lisa Burton, M.D., Gene O'Hara, Peter S. Fine, Banner Health Board of Directors, and Appellate Review Committee of Banner Health.

Opinion by Judge LICHTENSTEIN.

This appeal raises issues of subject matter jurisdiction under the Colorado Professional Review Act (CPRA), sections 12–36.5–101 to –203, C.R.S.2008, and immunity under the Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C. §§ 11101 to –11152.

Plaintiffs, Drs. James Lee and Jeffrey Lee, and their clinic, Front Range Surgical Specialists, Inc. (Front Range), filed a complaint in district court asserting various common law claims against defendants, Drs. Donald Mellman, Les Fraser, Rick Kiser, and Lisa Burton, Banner Health, the North Colorado Medical Center (NCMC), Gene O'Hara, Peter S. Fine, the Banner Health Board of Directors, and the Appellate Review Committee of Banner Health. Plaintiffs alleged defendants improperly denied trauma privileges to Dr. James Lee (Dr. Lee) and subjected him to a deficient peer review process in retaliation for plaintiffs' refusal to support defendants' business decision to restrict the performance of endoscopies. Defendants assert they engaged in an appropriate peer review process.

The trial court dismissed plaintiffs' claims for lack of subject matter jurisdiction based on their failure to exhaust administrative remedies under the CPRA, and therefore did not reach defendants' immunity claim under the HCQIA. We reverse the judgment of the district court to the extent it dismissed (1) Dr. Lee's claims for defamation and invasion of privacy that were based on the alleged "public denouncement" of Dr. Lee and (2) the claims made by Dr. Jeffrey Lee and Front Range (except for the breach of contract claim, which is not before us on appeal). We affirm the judgment in all other respects and remand the case to the district court for

a hearing on defendants' claim of HCQIA immunity and for further proceedings consistent with this opinion.

## I. Background

Dr. Lee and Dr. Jeffrey Lee are brothers who operate their own medical practice, Front Range, in Greeley, Colorado. The brothers had privileges at Greeley's NCMC to provide oncology care, surgery, and trauma care.

For over six years, plaintiffs and defendants have disputed the circumstances surrounding Dr. Lee's departure from trauma call at NCMC. According to plaintiffs' complaint, in early 2003, defendant Dr. Fraser, a member of a medical clinic and chair of NCMC's Surgical Quality Improvement (SQI) committee, threatened Dr. Lee's brother, Dr. Jeffrey Lee, with the loss of trauma privileges at NCMC if the brothers would not support the efforts of Dr. Fraser and other defendants to limit the performance of endoscopy procedures to gastroenterology specialists.

Sometime after this initial incident, defendant Dr. Burton, a partner in another medical group and chair of NCMC's Trauma Quality Improvement committee, warned Dr. Lee that plaintiffs would have to "either get on board" with the efforts to allow only specialists to perform endoscopy procedures or "be branded as troublemakers."

Plaintiffs allege that when they resisted, Dr. Burton, acting outside NCMC's recognized peer review procedures, called a meeting (on July 9, 2003) with Drs. Fraser and Mellman and Ruth Sens to discuss an "emergency situation" concerning Dr. Lee and four allegedly mishandled trauma cases. At the time of the meeting, Dr. Mellman was NCMC's Associate Administrator of Medical Affairs, and Ruth Sens was director of Quality Improvement.

The meeting participants apparently agreed that Dr. Mellman would take immediate action against Dr. Lee, and that the four allegedly mishandled trauma cases would be referred both for outside review and for review by NCMC's SQI committee. Plaintiffs allege that under NCMC peer review rules,

the SQI committee was not empowered to review trauma cases.

Plaintiffs allege that on July 10, 2003, Dr. Mellman threatened Dr. Lee with immediate suspension and reporting to the National Practitioner Data Bank unless he voluntarily resigned his trauma privileges. At the insistence of Dr. Mellman, Dr. Lee drafted a letter resigning his trauma privileges. When Dr. Lee gave the letter to him, Dr. Mellman berated Dr. Lee in a public area at NCMC where other members of the medical staff were within earshot. Dr. Mellman later informed Dr. Lee, in the presence of medical staff, that because the resignation letter was improperly worded, Dr. Mellman would still be required to report him to the National Practitioner Data Bank unless he rewrote the letter. Plaintiffs assert that Dr. Mellman's threats coerced Dr. Lee to "voluntarily waive his rights" to protections available under the hospital's peer review process. When Dr. Lee tried to rescind his "voluntary resignation," Dr. Mellman again threatened him with immediate reporting to the National Practitioner Data Bank.

Plaintiffs allege that shortly after this public confrontation, Dr. Mellman directed four NCMC hospital personnel to approach Dr. Lee, who, at the time, was preparing to assist another doctor with a surgical operation. They asked if he had spoken to Dr. Mellman, telling him that he "was not to operate until he had talked with [Dr.] Mellman."

Plaintiffs further allege that on January 23, 2004, as Dr. Lee was again preparing for surgery, he was handed, in a manner calculated to create a public display, a letter stamped seven times: "CONFIDENTIAL." Some NCMC hospital employees approached Dr. Lee before he was about to commence surgery to ensure he had received this confidential letter.

Plaintiffs assert that defendants did not follow the peer review process dictated by the NCMC bylaws for approximately seven months—from July 10, 2003, when Dr. Mellman allegedly directed Dr. Lee to resign from trauma call until February 27, 2004, when defendant Dr. Kiser, who was chair of NCMC's Credentials Committee, notified Dr. Lee of the Credentials Committee's receipt

of a formal request from the SQI committee for investigative and corrective action.

Plaintiffs filed a complaint in federal district court raising federal and state antitrust claims and other state law claims. In May 2005, the federal district court dismissed the antitrust claims with prejudice. It dismissed the remaining state claims, without prejudice, for want of subject matter jurisdiction. In August 2005, plaintiffs filed a complaint in state district court raising state claims substantially similar to those brought in federal district court for (1) civil conspiracy, (2) breach of contract, (3) tortious interference with contract, (4) defamation and intentional interference with contractual relations, (5) invasion of privacy, (6) negligence, (7) liability based on ratification and failure to conduct an independent investigation. Plaintiffs' complaint also included a request for exemplary damages.

On September 14, 2005, Dr. Lee received notice of a final decision by the Banner Health Board of Directors (Board) accepting the recommendation of Banner's Appellate Review Committee. In light of Dr. Lee's receipt of the Board's final decision, plaintiffs filed an amended complaint on November 7, 2005 reflecting the final decision.

Prior to the filing of the amended complaint, on October 28, 2005, defendants filed two motions to dismiss plaintiffs' complaint, asserting that (1) the district court lacked subject matter jurisdiction over plaintiffs' claims because plaintiffs failed to exhaust their administrative remedies under the CPRA by not filing their claims with the state Committee on Anticompetitive Conduct (CAC); (2) defendants were immune from suit under the CPRA and the HCQIA; and (3) plaintiffs' claims for breach of contract, invasion of privacy, and negligence failed to state claims upon which relief could be granted.

Although defendants styled their motions as motions to dismiss, the district court noted that the parties had attached numerous exhibits relevant to some of the claims. It therefore treated defendants' motions as motions for summary judgment, but considered the claims for breach of contract, invasion of privacy, and negligence under C.R.C.P. 12(b)(5).

On June 19, 2007, the district court partially denied defendants' motions. It first concluded that because the CAC has no power to award monetary relief, plaintiffs were not required to file their claims with the CAC in order to properly exhaust their administrative remedies under the CPRA. Next, the court ordered a hearing to determine the validity of defendants' assertions of HCQIA and CPRA immunity. The court then found that plaintiffs had successfully stated claims for invasion of privacy and negligence, but dismissed plaintiffs' claim for breach of contract for failure to state a claim. Plaintiffs' breach of contract claim is not at issue in this appeal.

On October 30, 2007, defendants filed a joint motion for reconsideration of their motions to dismiss in light of the supreme court decision in *Crow v. Penrose–St. Francis Healthcare System*, 169 P.3d 158 (Colo.2007), which held that common law claims arising out of the peer review process may not be asserted in court until a physician has exhausted his or her administrative remedies under the CPRA. In their response, plaintiffs asserted that they were not required to file their claims "with the CAC because none of their allegations ... alleged anticompetitive conduct by the defendants."

The district court, relying on *Crow*, dismissed all of plaintiffs' claims with prejudice based on Dr. Lee's failure to exhaust administrative remedies under the CPRA. Contrary to plaintiffs' position, the district court found "the conduct with which Plaintiffs take issue [is] irreversibly intertwined with alleged anti-competitive conduct by Defendants." Plaintiffs appeal the judgment of dismissal.

## II. Standard of Review

■ A trial court may consider any competent evidence pertaining to a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction without converting the motion to a summary judgment motion. *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo.1993).

■ A trial court's determination regarding subject matter jurisdiction is a question of law and is therefore subject to de novo review. *Pfenninger v. Exempla, Inc.,* 12 P.3d 830, 833 (Colo.App.2000) *(Pfenninger I)* (trial court's determination regarding subject matter jurisdiction is reviewed de novo).

### III.  Discussion

■ Pursuant to C.R.C.P. 12(b)(1), a plaintiff has the burden of proving that the trial court has jurisdiction to hear the case. *Pfenninger I,* 12 P.3d at 833. If a party fails to exhaust administrative remedies when required, the trial court is without jurisdiction to hear the case. *Id.; see also State v. Golden's Concrete Co.,* 962 P.2d 919, 923 (Colo.1998).

■ Section 12–36.5–106 of the CPRA provides a two-track exhaustion requirement for claims arising out of the peer review process, "depending on whether the claim alleges anticompetitive conduct by the peer review committee." *Crow,* 169 P.3d at 165. To exhaust administrative remedies for claims arising out of the peer review process that do not allege anticompetitive conduct, a physician need only obtain a final board action by the hospital. § 12–36.5–106(8); *Crow,* 169 P.3d at 165. To exhaust administrative remedies for claims arising out of the peer review process that allege anticompetitive conduct, a physician must obtain a final board action by the hospital, and then present his or her claims alleging anticompetitive conduct to the CAC. § 12–36.5–106(7) ("Any physician ... who believes that [a final board] action resulted from unreasonable anticompetitive conduct shall have, as his sole and exclusive remedy, direct review of the record by the [CAC]."); *Crow,* 169 P.3d at 163.

■ The CAC's jurisdiction does not extend to the review of a hospital's denial of a physician's privileges when the denial is unrelated to the physician's qualifications, conduct, or quality of patient care. *Ryals v. St. Mary–Corwin Reg'l Med. Ctr.,* 10 P.3d 654, 662 (Colo.2000).

Plaintiffs contend the district court had subject matter jurisdiction over their claims because the CPRA exhaustion requirement did not require them to present their claims to the CAC prior to filing in district court. They specifically assert that (1) their complaint alleged retaliatory conduct as opposed to anticompetitive conduct; or (2) assuming arguendo that the alleged conduct was anticompetitive, the conduct did not stem from a peer review process.

As a preliminary matter, we note that the procedural posture of the plaintiffs is distinct. Dr. Lee is the only plaintiff that was the subject of peer review. Therefore we will analyze the CPRA exhaustion requirement separately as to Dr. Lee and the other two plaintiffs, Dr. Jeffrey Lee and Front Range.

### A.  Dr. Jeffrey Lee and Front Range

Dr. Jeffrey Lee and Front Range contend the court erred by dismissing their claims because they have damages that exist independently of Dr. Lee's claims. Defendants assert that the claims of Dr. Jeffrey Lee and Front Range are derivative of Dr. Lee's claims and are *"per se* precluded" by the CPRA's exhaustion requirement in section 12–36.5–106(7) due to Dr. Lee's failure to present his claims to the CAC. We agree with Dr. Jeffrey Lee and Front Range.

■ In its order dismissing plaintiffs' amended complaint, the district court did not explain its rationale—beyond its reliance on *Crow*—for dismissing claims made by Dr. Jeffrey Lee and Front Range. Consequently, we infer that the district court dismissed their claims because it believed them to be barred by Dr. Lee's failure to bring his own claims before the CAC.

In *Ryals,* our supreme court held that only claims arising out of the peer review process are subject to the CPRA's exhaustion of remedies requirement. *Ryals,* 10 P.3d at 659. In addition, section 12–36.5–106(7) unambiguously states that only physicians who are "the subject of a final action by a governing board" need present peer review claims that allege anticompetitive conduct to the CAC. *Crow,* 169 P.3d at 165. In the present case, neither Dr. Jeffrey Lee nor Front Range was subject to peer review, and neither was the

subject of a final action by a governing board. Thus, they had no avenue for relief other than to bring their claims in district court.

■ In addition, the civil conspiracy, interference with contract, and liability based on ratification and failure to conduct an independent investigation claims brought by Dr. Jeffrey Lee and Front Range (as well as their request for exemplary damages) were not dependent upon Dr. Lee's recovery on his claims, and are therefore not properly characterized as derivative. *See Elgin v. Bartlett,* 994 P.2d 411, 415 (Colo.1999) (derivative claims are unique in that they depend entirely upon the right of the injured person to recover). Furthermore, the invasion of privacy and defamation claims were not subject to the CPRA's exhaustion requirement, as discussed below.

We therefore conclude that Dr. Lee's failure to present his claims to the CAC did not deprive the district court of jurisdiction over the claims of Dr. Jeffrey Lee and Front Range.

### B. Dr. Lee

We now turn to whether Dr. Lee was required to present his claims to the CAC prior to filing in district court. We conclude that, other than the invasion of privacy and defamation claims discussed below, Dr. Lee was required to exhaust his claims before the CAC, because his claims alleged anticompetitive conduct arising out of the peer review process.

#### i. Anticompetitive Conduct

In its order dismissing Dr. Lee's claims, the district court found that the amended complaint alleged anticompetitive conduct, and concluded that the "attempt to characterize [d]efendants' purported conduct as 'retaliation' instead of 'anti-competition' amount[ed] to an issue of semantics."

On appeal, Dr. Lee argues that retaliatory conduct is different from anticompetitive conduct, and that his claims were based on defendants' retaliation for plaintiffs' refusal to support defendants' efforts to limit the

performance of endoscopies to specialists. We are not persuaded.

■ After our own review of the amended complaint, we agree with the district court that the complaint alleges anticompetitive conduct because it is replete with assertions such as: "Defendants conspired and agreed to retaliate against Plaintiffs and their clinic, to destroy competition in Greeley and northern Colorado." Moreover, plaintiffs describe Drs. Burton, Fraser, and Kiser as competitors, and accuse Banner Health of allowing certain doctors to use the peer review process to arbitrarily ruin the reputations and practices of "competitor doctors." Whether defendants had retaliatory motives for engaging in anticompetitive conduct does not alter the fact that Dr. Lee alleged anticompetitive conduct. *See Crow,* 169 P.3d at 166. Therefore, he was required to present his claims to the CAC before bringing them in court, so long as the claims arose out of the peer review process. § 12–36.5–106(7); *Crow,* 169 P.3d at 165.

#### ii. Peer Review

■ Plaintiffs contend that Dr. Lee's claims did not arise out of a peer review process. They argue the claims either did not involve patient care issues or were based on conduct that occurred prior to any official NCMC peer review procedure. With the exception of the invasion of privacy and defamation claims that were based on Dr. Mellman's alleged "public denouncement of Dr. James Lee," we disagree with plaintiffs.

The CAC only has jurisdiction over claims arising from a peer review activity assessing physician competence. *Ryals,* 10 P.3d at 659. In *Ryals,* the defendant hospital denied the plaintiff physician MRI-reading privileges. Because the hospital's denial was based on an exclusive contract granting MRI-reading privileges to a specific group of doctors and not on concerns about the plaintiff's competence, the supreme court concluded that the plaintiff physician's claims had not arisen from a peer review process, and thus were not subject to the CPRA's exhaustion requirements. *Id.*

Here, plaintiffs do not dispute that at the initial July 9, 2003 meeting among Dr. Burton, Dr. Fraser, Dr. Mellman, and Sens, the participants reviewed four of Dr. Lee's trauma cases.

However, plaintiffs assert that the purported peer review that commenced at the July 9, 2003 meeting did not follow NCMC peer review procedures, and thus could not qualify as peer review for purposes of the CPRA. Even if we were to assume, without deciding, that the process did not follow recognized procedures, we are not persuaded.

Under the CPRA, peer review committees may investigate the "quality or appropriateness of patient care rendered by or the professional conduct of any [licensed] physician." § 12–36.5–104(6)(a)(II); see Ryals, 10 P.3d at 659. Since it is undisputed that Dr. Burton, Dr. Fraser, Dr. Mellman, and Sens met on July 9, 2003 to review four of Dr. Lee's trauma cases, the July 9 meeting commenced Dr. Lee's peer review process.

Failure by defendants to conduct the peer review process in accordance with NCMC bylaws does not mean defendants were engaged in something other than peer review. Rather, any alleged failure of defendants to comply with NCMC bylaws would simply constitute a deficiency in the peer review process. See Crow, 169 P.3d at 168 ("Crow's complaints stem solely from the process, or in his view, lack of process, that he has been afforded."); see also § 12–36.5–104(4) (professional review committee must operate pursuant to written bylaws approved by governing board); Peper v. St. Mary's Hosp. & Med. Ctr., 207 P.3d 881, 888–89 (Colo.App. 2008) (addressing adequacy of notice and hearing procedures).

Under Crow, claims based on deficiencies in the peer review process are treated no differently from claims based on the outcome of the peer review process. Crow, 169 P.3d at 168–69. Consequently, we conclude that Dr. Lee's claims regarding the adequacy of defendants' investigation and review of his competence are claims arising out of the peer review process, and therefore fall within the CAC's jurisdiction.

Pursuant to section 12–36.5–106(7), Dr. Lee was required to present his claims (other than invasion of privacy and defamation) to the CAC before filing suit in district court. Id. at 163. Because he did not do so, the district court was without jurisdiction to entertain his claims, other than the below-discussed invasion of privacy and defamation claims.

### iii. Invasion of Privacy and Defamation Claims

▄▄▄ Plaintiffs contend the court erred by dismissing their fourth claim, for defamation, and their fifth claim, for invasion of privacy, asserting that the CAC does not have jurisdiction over common law claims that do not arise out of peer review activity. We agree, but only to the extent the claims are based on Dr. Mellman's alleged "public denouncement of Dr. James Lee."

As an initial matter, we note that although plaintiffs assert in the argument heading of their brief that the court erred by dismissing their claim for invasion of privacy, the text of their arguments addresses their claims for invasion of privacy and defamation to the extent they were based on public confrontations between Drs. Mellman and Lee. We therefore address plaintiffs' arguments regarding both claims.

Plaintiffs rely on Pfenninger v. Exempla, Inc., 17 P.3d 841 (Colo.App.2000) (Pfenninger II), to argue that physicians are not required to present common law claims to the CAC because the CAC has no jurisdiction over such claims. Plaintiffs assert that the supreme court's holding in Crow does not alter Pfenninger II's holding. While we disagree with plaintiffs' characterization of Crow, we agree that the district court erred in dismissing plaintiffs' two claims here. Contrary to plaintiffs' argument, Crow limits the Pfenninger II holding, but only to the extent that a physician asserts common law claims that arise out of a peer review activity. Pursuant to Crow, "common law claims arising out of the peer review procedure are subject to the exhaustion of administrative remedies requirement detailed in subsections 12–36.5–106(7) and (8)." Crow, 169 P.3d at 163 (emphasis added).

Here, rather than occurring during a peer review procedure, Dr. Mellman's alleged "public denouncement" of Dr. Lee was made in hallways and operating rooms at NCMC. To the extent plaintiffs' invasion of privacy and defamation claims were based on this conduct, they were not subject to the CPRA's exhaustion of administrative remedies requirement under section 12–36.5–106. We conclude, therefore, that plaintiffs were not required to present these claims to the CAC before proceeding with them in district court.

We further conclude that to the extent plaintiffs' fourth and fifth claims allege NCMC and Banner Health share liability for Dr. Mellman's alleged torts, plaintiffs were not required to first present these claims to the CAC. We express no opinion, however, on the validity of plaintiffs' claims.

### C. HCQIA Immunity

Defendants contend they are entitled to statutory immunity under the HCQIA. Insofar as we have reversed the dismissal of some of plaintiffs' claims, we remand for the district court to conduct a hearing on defendants' assertion of HCQIA immunity.

### D. Attorney Fees and Costs

Defendants next contend they are entitled to an award of attorney fees and costs on appeal, citing section 13–17–201, C.R.S.2008, which provides for the award of attorney fees in a tort action dismissed under Crim. P. 12(b). We disagree.

Had defendants successfully defended the C.R.C.P. 12(b) dismissal of plaintiffs' claims on appeal, they would be entitled to recover reasonable attorney fees on appeal. *Cf. State Farm Fire & Cas. Co. v. Weiss,* 194 P.3d 1063, 1069 (Colo.App.2008). Here, however, because we have reinstated some of plaintiffs' claims, defendants cannot recover their attorney fees under section 13–17–201. *See Rec-*

*tor v. City & County of Denver,* 122 P.3d 1010, 1018 (Colo.App.2005); *Sundheim v. Bd. of County Comm'rs,* 904 P.2d 1337, 1353 (Colo.App.1995) (§ 13–17–201 inapplicable because one of the claims had been restored in part), *aff'd,* 926 P.2d 545 (Colo.1996).

In light of this conclusion, we need not address plaintiffs' remaining arguments in opposition to defendants' request for attorney fees.

As to costs, section 13–17–201 does not provide for an award of costs, and because we have reinstated some of plaintiffs' claims, we decline to award defendants costs on appeal. *See* C.A.R. 39(a) (if a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court).

### IV. Conclusion

The judgment of the district court is reversed to the extent it dismissed Dr. Lee's claims for defamation and invasion of privacy based on Dr. Mellman's alleged "public denouncement" of Dr. Lee. The judgment of the district court is also reversed to the extent it dismissed all claims made by Dr. Jeffrey Lee and Front Range (except for the breach of contract claim, which is not before us on appeal). The judgment is affirmed in all other respects. The case is remanded to the district court to hold a hearing to determine defendants' claim of HCQIA immunity and for further proceedings consistent with this opinion.

Judge TAUBMAN and Judge ROMÁN concur.