24CA0626 Mostellar v Manitou Springs 02-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0626
El Paso County District Court No. 23CV31616
Honorable Eric Bentley, Judge

---

Jaimi J. Mostellar,

Plaintiff-Appellant,

v.

City of Manitou Springs,

Defendant-Appellee.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 27, 2025

---

Kane Law Firm, P.C., Mark H. Kane, Colorado Springs, Colorado, for Plaintiff-Appellant

Tucker Holmes, P.C., Bradley D. Tucker, Michael T. Sullivan, Centennial, Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Jaimi J. Mostellar, appeals the district court's entry of judgment dismissing her lawsuit against defendant, the City of Manitou Springs (Manitou), because Manitou is immune from suit under the Colorado Governmental Immunity Act (CGIA) and thus the court lacked subject matter jurisdiction. Mostellar urges us to reverse the court's judgment and reinstate her complaint. We affirm.

## I.    Background

¶ 2    Mostellar was injured in Manitou after she tripped over a bus stop sign remnant (the sign base) on a sidewalk.

¶ 3    Mostellar filed a complaint asserting claims of premises liability and negligence against Manitou and others. Mostellar alleged that she was injured because of a dangerous condition of which Manitou knew or should have known on property that Manitou was responsible for maintaining. Manitou filed a C.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction (the motion to dismiss), asserting that it was a public entity immune from suit under the CGIA, sections 24-10-101 to -120, C.R.S. 2024, and that it had not waived immunity.

¶ 4    Mostellar and Manitou filed a joint status report after the motion to dismiss was fully briefed.  In the status report, Manitou requested that the court rule on the motion to dismiss based on the pleadings if the court believed it had the necessary information.  Mostellar indicated she did not object to proceeding in that manner.

¶ 5    The court granted the motion to dismiss.  The court found that the parties didn't dispute the basic facts and that neither party had requested an evidentiary hearing.  The court concluded that Mostellar failed to meet her burden of proving that (1) the sign base constituted an unreasonable risk to the public; (2) Manitou knew or should've known of the risk posed by the sign base; and (3) Manitou's negligence caused "the trip hazard" posed by the sign base.  Accordingly, the court concluded that Mostellar hadn't demonstrated that Manitou waived immunity and dismissed Manitou from the case.

¶ 6    Mostellar appeals, asserting that the court erroneously relied on evidence outside the pleadings, which consequently converted the motion to dismiss to a motion for summary judgment under C.R.C.P. 56.  She asserts that, because the court misapplied the

law governing summary judgment motions, the judgment must be reversed.

¶ 7    We first discuss the legal principles underlying the CGIA and the standard district courts must use to resolve a public entity's motion to dismiss on grounds that the entity is immune from suit under the CGIA. We then discuss our standard for reviewing a district court's determination that it lacks subject matter jurisdiction over a public entity because the CGIA applies. Finally, applying these principles, we conclude that the court didn't err by determining Manitou was immune from suit under the CGIA and dismissing Manitou from these proceedings.

## II.    Legal Principles

### A.    The CGIA

¶ 8    The CGIA generally bars actions "against a public entity for [an] injury which lies in tort or could lie in tort." § 24-10-108, C.R.S. 2024; *see Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo. 1993) ("Unless a plaintiff complies with the statutory requirements, . . . sovereign immunity bars suit against a public entity for injury which lies or could lie in tort.").

¶ 9     "Questions of governmental immunity implicate subject matter jurisdiction and are determined in accordance with C.R.C.P. 12(b)(1)." *St. Vrain Valley Sch. Dist. RE-1J v. Loveland*, 2017 CO 54, ¶ 10. "[C]ourts lack subject matter jurisdiction over claims barred by sovereign immunity." *Grand Junction Peace Officers' Ass'n v. City of Grand Junction*, 2024 COA 89, ¶ 1. Under C.R.C.P. 12(b)(1), when a public entity seeks to dismiss the plaintiff's complaint on the grounds of immunity under the CGIA, the plaintiff has the burden of proving that the entity waived immunity and the court therefore has subject matter jurisdiction. *Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 85 (Colo. 2003).

¶ 10    While the CGIA generally immunizes public entities from tort liability, it contains exceptions that "waive[] this immunity under certain limited circumstances." *Medina v. State*, 35 P.3d 443, 453 (Colo. 2001); *see* §§ 24-10-104, -106, C.R.S. 2024. Because the CGIA derogates common law, we strictly construe its provisions granting immunity and broadly construe its provisions waiving immunity to determine whether a plaintiff satisfied their burden. *Smokebrush Found. v. City of Colorado Springs*, 2018 CO 10, ¶ 22. "Sovereign immunity is waived by a public entity in an action for

4

injuries resulting from . . . [a] dangerous condition of a public . . . sidewalk which was designed and intended for public travel . . . ." § 24-10-106(1)(d)(I).

¶ 11    "[P]ublic entities are liable for dangerous conditions on sidewalks . . . ." *City of Aspen v. Meserole*, 803 P.2d 950, 955 (Colo. 1990). Section 24-10-103(1.3), C.R.S. 2024, defines "dangerous condition" as

> either a physical condition of a facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist[,] and which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility.

In *Walton v. State*, 968 P.2d 636, 644 (Colo. 1998), the supreme court held that immunity is waived under section 24-10-106(1)(d)(I) for a "dangerous condition" if the plaintiff's injuries occurred as a result of

(1)    the physical condition of the public facility or the use thereof;

(2)    which constitutes an unreasonable risk to the health or safety of the public;

5

(3) which is known to exist or should have been known to exist in the exercise of reasonable care; and

(4) which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility.

A court must consider the four *Walton* factors in deciding whether a plaintiff met their burden to rebut a public entity's assertion of sovereign immunity in a C.R.C.P. 12(b)(1) motion. Furthermore, to prove that the condition of a sidewalk presents an "unreasonable risk," a plaintiff must prove that the condition "created a chance of injury, damage, or loss which exceeded the bounds of reason." *City & Cnty. of Denver v. Dennis*, 2018 CO 37, ¶ 23. In making its factual findings, the court must afford a plaintiff the reasonable inferences from their undisputed evidence. *Id.* at ¶ 11.

### B. The Standard for Determining a Public Entity's Motion to Dismiss Based on the CGIA

¶ 12 In *Trinity*, the supreme court considered whether a court should apply a C.R.C.P. 12(b)(1) or a C.R.C.P. 56 standard when a public entity asserts immunity under the CGIA and seeks dismissal of the plaintiff's claims against it. *See Trinity*, 848 P.2d at 924-27.

6

¶ 13     Relying on parallels between Rule 12(b)(1) of the Federal Rules of Civil Procedure and C.R.C.P. 12(b)(1), *Trinity* held that, "[i]f the motion [to dismiss] is a factual attack on the jurisdictional allegations of the complaint . . . , the trial court may receive any competent evidence pertaining to the motion" without converting it to a summary judgment motion. *Id.* at 924.

### III.     Standard of Review

¶ 14     Questions of immunity under the CGIA present mixed questions of fact and law. *Maphis v. City of Boulder*, 2022 CO 10, ¶ 12.  In deciding a C.R.C.P. 12(b)(1) motion to dismiss based on immunity under the CGIA, the court must make factual findings about its ability to hear the case. *Dennis*, ¶ 9.

¶ 15     We review a court's factual findings for clear error, but we review de novo the legal determination of whether those facts demonstrate that the public entity waived sovereign immunity under the CGIA. *See Maphis*, ¶ 12 (noting that whether jurisdictional facts constitute a "dangerous condition" under the CGIA is reviewed de novo).

## IV.    Application

¶ 16     Manitou contends that Mostellar didn't preserve her argument that the court converted the motion to dismiss to a motion for summary judgment.  We disagree.

¶ 17     Manitou moved for an award of attorney fees after the court granted the motion to dismiss.  Mostellar responded that Manitou wasn't entitled to attorney fees because the motion to dismiss was "treated as a motion for summary judgment."

¶ 18     Furthermore, in its order granting Manitou's motion for attorney fees, the court said it "did not convert [Manitou]'s motion into a motion for summary judgment; rather it considered the facts and dismissed the claims pursuant to the CGIA, [C.R.C.P.] 12(b)(1), and *Trinity*."

¶ 19     Thus, the record demonstrates that Mostellar adequately preserved this issue.  *See Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) ("[T]o preserve [an] issue for appeal[,] all that [is] needed [is] that the issue be brought to the attention of the trial court and that the court be given an opportunity to rule on it.").

### A. The Court Correctly Applied the Standards of C.R.C.P. 12(b)(1) to the Motion to Dismiss

¶ 20     Mostellar contends that, by considering matters outside the motion to dismiss — specifically, the accompanying exhibits — the court converted the motion to dismiss to a motion for summary judgment under C.R.C.P. 56. Mostellar also asserts that the court should not have made factual findings without holding an evidentiary hearing and that she "was entitled to inferences in her favor in law under C.R.C.P. 12(b)(1) and in fact under C.R.C.P. 56 but was given neither." We address and reject these contentions in turn.

#### 1. The Court Appropriately Considered Evidence Outside the Complaint to Determine the Motion to Dismiss

¶ 21     Mostellar asserts that, "[u]nder C.R.C.P. 12(b)(1), the court should not have considered anything outside [her] complaint." We disagree.

¶ 22     A public entity's assertion of immunity under the CGIA raises a jurisdictional question that the court is empowered to resolve as the fact finder under C.R.C.P. 12(b)(1). *See Trinity*, 848 P.2d at 924-25; *Medina*, 35 P.3d at 454; *see also Fogg v. Macaluso*, 892 P.2d 271, 277 (Colo. 1995) ("Whether a claim falls within an

exception to the [C]GIA's waiver of sovereign immunity is a question of subject matter jurisdiction and, if raised before trial, it appropriately is addressed under C.R.C.P. 12(b)(1)."); *Corsentino v. Cordova*, 4 P.3d 1082, 1087 (Colo. 2000) (noting that whether a public entity qualifies for immunity is a question of subject matter jurisdiction and, if the issue is raised before trial, it is properly addressed pursuant to a C.R.C.P. 12(b)(1) motion to dismiss); *accord Tidwell*, 83 P.3d at 81; *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n*, 2024 CO 46, ¶ 23. Likewise, a court may consider all competent evidence to determine whether a plaintiff has met their burden to demonstrate a waiver of sovereign immunity, and doing so does not convert a motion to dismiss into a motion for summary judgment. *Trinity*, 848 P.2d at 924; *accord Lee v. Banner Health*, 214 P.3d 589, 593 (Colo. App. 2009).

¶ 23 Despite recognizing this authority in her response to the motion to dismiss, Mostellar's appellate arguments are contrary to these cases. Further, she does not identify legal authority to support her assertion that the court was restricted to the four corners of her complaint in deciding the motion to dismiss. "It is the task of counsel to inform us . . . both as to the specific errors

relied on and the grounds and supporting facts and authorities." *Mauldin v. Lowery*, 255 P.2d 976, 977 (Colo. 1953). Mostellar has failed to advise us of alternative controlling legal authority, and we are bound by the standards set forth in the supreme court's *Trinity* opinion. *See Silver v. Colo. Cas. Ins. Co.*, 219 P.3d 324, 330 (Colo. App. 2009) (noting that a division of the Colorado Court of Appeals is not at liberty to disregard a rule announced in a prior supreme court case absent "some clear indication" that the supreme court overruled its prior case). Thus, the court was entitled to consider any competent evidence to resolve the motion to dismiss, and we reject Mostellar's contention otherwise.

2.    The Court Acted Within Its Discretion to Rule on the Pleadings

¶ 24    Mostellar alternatively argues that the court didn't have "all relevant evidence" it needed to rule on the motion to dismiss. But she doesn't identify what relevant evidence she believes the court was missing; rather, she takes issue with the court's reliance on Manitou's evidence — instead of holding an evidentiary hearing — to make the factual findings supporting the judgment. We discern no error.

11

¶ 25    A court isn't required to hold an evidentiary hearing to decide a defendant's motion to dismiss under the CGIA if the court has been presented with all relevant evidence.  *See Trinity*, 848 P.2d at 925.  Mostellar doesn't point us to, nor have we found, any place in the record where she denied the facts that Manitou presented in the motion to dismiss or the supporting exhibits.  Instead, Mostellar asserted that Manitou "allowed a significant trip hazard to exist on its sidewalks."  The extent of the hazard, if any, that the sign base created was a legal question for the court to decide and not a disputed fact.

¶ 26    Mostellar didn't present any opposing evidence in her response to the motion to dismiss or request that the court hold an evidentiary hearing.  Indeed, she agreed that the court could decide the motion to dismiss based on the pleadings, unless the court determined, in its discretion, that it needed additional information.  And, as discussed *infra* Part IV.B.1, the parties presented sufficient evidence in their pleadings from which the court could determine the undisputed facts supporting its conclusion that Manitou had not waived its sovereign immunity.  Accordingly, we also reject this contention.

### 3. The Court Appropriately Considered Any Reasonable Inferences to Which Mostellar Was Entitled

¶ 27 We disagree with Mostellar's assertion that she was not given the benefit of inferences to which she was entitled for two reasons. First, she was not entitled to an inference under C.R.C.P. 56 because the court did not convert the motion to dismiss to a motion for summary judgment. Second, the court did afford her the reasonable inferences from her *undisputed* evidence. Mostellar alleged in her complaint that she was injured after she tripped and fell on a public sidewalk in Manitou and that the sign base protruding above the sidewalk caused her fall. Manitou didn't dispute these facts in the motion to dismiss, and the court appropriately incorporated these undisputed facts in the judgment.

¶ 28 Despite her contention otherwise, Mostellar didn't dispute most of the facts upon which the court relied to decide the motion to dismiss. Rather, she disputed the legal significance of those facts and whether they supported her burden to show that Manitou had waived immunity from a suit seeking damages for the type of injuries that she incurred. Accordingly, we turn to whether

Mostellar met her burden to show that Manitou waived its sovereign immunity.

## B. Mostellar Failed to Meet Her Burden to Demonstrate that Manitou Waived Immunity

¶ 29    Mostellar had the burden of demonstrating that Manitou waived its immunity under the CGIA because her injuries resulted from a dangerous condition of which Manitou knew or should have known. *See Trinity*, 848 P.2d at 925; *see also Medina*, 35 P.3d at 454. To do so, she needed to demonstrate that the *Walton* factors were satisfied.

¶ 30    Manitou didn't dispute that Mostellar's injuries resulted from a physical condition of a public sidewalk. Thus, Mostellar needed to establish, and the court considered, the three remaining factors. As discussed next, the record supports the court's factual findings. We agree with the court's conclusion that Mostellar failed to demonstrate that the sign base constituted an unreasonable risk to the public based on the undisputed facts.

### 1. The Record Supports the Court's Determination of the Undisputed Facts

¶ 31    The exhibits that Manitou submitted in support of the motion to dismiss included Mostellar's notice to Manitou of her claim,

14

which included photos of the sign base taken from different angles;

an affidavit from Manitou's deputy city manager, who attested to

his supervisory role over the department responsible for overseeing

sidewalks within Manitou and his investigation into the status of

the sign base after Mostellar notified Manitou of her claim; and

photos of the sign base and the surrounding area, including a photo

of the sign base before the post was removed and a photo showing

the sign base covered by a traffic cone.

¶ 32    After reviewing the pleadings and the supporting

documentation, the court found the following relevant undisputed

facts:

- The sign base over which Mostellar tripped protruded about three inches above the sidewalk.

- The sign base was located in a narrow, off-white portion of pavement that was differentiated from the salmon pink color of the "throughway" portion of the sidewalk where pedestrians typically walk.

- The signpost appeared intact one month before Mostellar's trip and fall and, three months later, it had

been removed and a traffic cone placed at the sign's former location.

- Manitou maintains a "See-Click-Fix" function on its city website where people can report city maintenance issues or concerns, and Manitou's records did not contain any complaints or reports about the sign base.

¶ 33 Because the court's factual findings are supported by the record, we won't disturb them. *See Trinity*, 848 P.2d at 925.

2. The Sign Base Did Not Constitute an Unreasonable Risk

¶ 34 The court relied on the supreme court's reasoning in *Maphis* to conclude that Mostellar had not met her burden to show that the sign base presented an unreasonable risk to the public. In *Maphis*, ¶ 3, the plaintiff was injured after she tripped over a two-and-a-half-inch deviation in a Boulder sidewalk. Boulder moved to dismiss the plaintiff's complaint for lack of subject matter jurisdiction, arguing it was immune from suit under the CGIA because the sidewalk deviation didn't constitute a "dangerous condition." *Id.* at ¶ 1.

¶ 35 On review, the supreme court reiterated its holding in *Dennis* and further held that, to assess whether a plaintiff has met their

16

burden to prove the "dangerous condition" element of a CGIA immunity waiver, a court must "examin[e] the totality of the circumstances presented by the undisputed evidence as to whether that particular condition presented an unreasonable risk." *Maphis*, ¶ 22. The supreme court noted that what may constitute a "dangerous condition" in one set of circumstances may not in another, and may include consideration of things like whether the condition occurred in a "high foot-traffic area or an area of heightened public safety concern — such as at the entrance of an assisted-living facility, hospital, school, or daycare," or whether the condition had been the subject of frequent reporting by members of the public. *Id.* at ¶ 28. The supreme court concluded that, under the circumstances presented in *Maphis*, the plaintiff hadn't demonstrated that the deviation created a chance of injury, damage, or loss that exceeded the bounds of reason. *Id.* at ¶ 30.

¶ 36 After making its factual findings, the court concluded that (1) the sign base wasn't in an area with "heightened safety concerns"; (2) pedestrians were likely to see the sign base as it "st[u]ck[] straight up from the pavement and thus [was] much more visible to the naked eye than the 'largely imperceptible' slab

17

deviation" in *Maphis*; and (3) the sign was "located on a narrow, off-white strip of pavement next to the curb" in a space provided for street signs that was "differentiated by color from the salmon pink 'throughway' portion of the sidewalk" designated for pedestrians.

¶ 37    Although Mostellar argued that the sign base was located in a "high foot-traffic business area," the court rejected that contention as Mostellar didn't provide any supporting evidence; rather, she only provided argument of counsel.

¶ 38    Our own review of the record compels us to reach the same conclusion as did the court regarding whether Mostellar met her burden.

¶ 39    The sign base — which was irregularly shaped and protruded out of the ground close to the curb — was located in a portion of the sidewalk outside the "throughway" where pedestrians traveled and was differentiated by color from the "throughway." The sign base was not located in an area with heightened safety concerns, and Mostellar didn't present evidence that anyone had contacted Manitou to inform the city of the potential hazard. We acknowledge that the sign base posed some level of risk as it was protruding from the sidewalk. But we cannot conclude that, under the totality

18

of the circumstances, the sign base created a chance of injury, damage, or loss that exceeded the bounds of reason. Thus, we conclude that the court didn't err by determining that Mostellar hadn't met her burden to demonstrate that the sign base created an unreasonable risk.

¶ 40 Because Mostellar didn't meet this burden, we need not address the remaining *Walton* factors, and her allegation that the sign base constituted a dangerous condition for which Manitou's immunity from suit was waived necessarily fails.

## V. Requests for Attorney Fees

¶ 41 Both parties request that we grant their respective attorney fees related to this appeal.

¶ 42 Mostellar requests attorney fees in her primary brief but fails to cite a basis for that request. C.A.R. 39.1 ("If attorney fees are recoverable for the appeal, the principal brief of the party claiming attorney fees must include a specific request . . . *and must explain the legal and factual basis*, for an award of attorney fees.") (emphasis added); *see Cikraji v. Snowberger*, 2015 COA 66, ¶ 22 (declining to address unsupported request for attorney fees).

¶ 43     Manitou requests an award of its reasonable attorney fees as required by section 13-17-201, C.R.S. 2024. "Section 13-17-201 . . . requires a court to award reasonable attorney fees to the defendant when a court dismisses a plaintiff's tort action before trial under C.R.C.P. 12(b)," and "a party that successfully defends an appeal of an action that was dismissed on a pretrial motion to dismiss under the CGIA is entitled to recover its reasonable appellate attorney fees under section 13-17-201." *Henderson v. City & Cnty. of Denver*, 2012 COA 152, ¶ 47; *see Smith v. Town of Snowmass Village*, 919 P.2d 868, 873 (Colo. App. 1996) ("[A]n award of attorney fees is mandatory when a trial court dismisses an action under the [C]GIA for lack of subject matter jurisdiction."). Accordingly, we grant Manitou's request. Because the district court is in a better position than we are to determine the reasonable attorney fees Manitou has incurred, we remand the case for further proceedings on that issue. *See Stauffer v. Stegemann*, 165 P.3d 713, 719 (Colo. App. 2006).

## VI.  Disposition

¶ 44　　The judgment is affirmed.  The case is remanded to the district court with directions to award Manitou its reasonable appellate attorney fees, consistent with this opinion.

JUDGE LIPINSKY and JUDGE JOHNSON concur.